IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-01980-CMA-MEH

DARRELL DAVIS, individually and on behalf of all others similarly situated,
STEVEN SULLIVAN, individually and on behalf of all others similarly situated, and
JONATHON MALONE, individually and on behalf of all others similarly situated,
VICTOR AMADOR, individually and on behalf of all others similarly situated

    Plaintiffs,

v.

PAUL CRILLY,
WARREN ZEMLAK, and
DARIN MACDONALD,

    Defendants.

---

**ORDER APPROVING FLSA SETTLEMENT AND DISMISSING THIS CASE**

---

This matter is before the Court on Plaintiffs' Second Unopposed Motion for Approval of FLSA Settlement and Stipulation of Dismissal of Settled Claims. (Doc. # 128.) For the following reasons, the Court grants the motion, approves the Settlement Agreement (Doc. # 128-4), and dismisses this case.

### I.     BACKGROUND

This case commenced in September 2015, when Plaintiff Darell Davis filed his original Complaint alleging violations of the Fair Labor Standards Act (FLSA) against his employer Sanjel USA Inc. (Doc. # 1.) In May 2016, this Court issued an order staying and administratively closing this case pursuant to Sanjel's Notice of Bankruptcy and the automatic stay requirements. (Doc. # 55.) In August 2016, Plaintiff Davis filed a notice

with this Court that the case was subject to reopening based on an order from the Bankruptcy Court granting him relief from the automatic stay. (Doc. # 56.) Once re-opened, Plaintiff Davis amended his Complaint to add two new Plaintiffs (Steven Sullivan and Jonathon Malone) and three new Defendants: Paul Crilly, Chief Financial Officer of Sanjel; Warren Zemlak, Chief Operating Officer of Sanjel; and Dain MacDonald, the Chief Executive Officer, President, and Secretary of Sanjel (Defendants, collectively). (Doc. # 60-1.) Sanjel was dismissed from the action. (Doc. # 66.) A fourth Plaintiff, Victor Amador, was added thereafter. (Doc. # 117.)

Meanwhile, numerous other Sanjel employees learned of this lawsuit. No conditional certification was ever requested from or approved by this Court, and no formal notice ever circulated. Yet, numerous employees opted into the collective action, signing and submitting their consents to join. (Doc. ## 72–73, 84, 94–97, 102, 112.) Each one has also consented to the Named Plaintiffs representing their interests in this proceeding. (*Id.*) To date, 178 Plaintiffs have opted-into this action. (Doc. # 128 at 2.)

Over the course of the past year and half, numerous negotiations have taken place between the Parties, including a formal mediation and an attempted approval of at least one prior settlement agreement. Those negotiations ultimately culminated in the instant Settlement, which involves all 178 Plaintiffs (Settling Plaintiffs) (Doc. ## 128-1, 128-2, 128-3), all Defendants, and will accordingly result in a dismissal of all claims in this case.

## II. SETTLEMENT APPROVAL

In a suit by employees against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Requiring court approval of FLSA settlements effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours... due to the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

In order to approve a settlement prior to a final collective action ruling, "the Court must make some final class certification finding." *Rios v. Midwest Partitions, Inc.*, No. 15-CV-01456-PAB-MEH, 2016 WL 7212480, at *2 (D. Colo. Dec. 13, 2016)(citing *Whittington v. Taco Bell of Am., Inc.*, No. 10–cv–01884–KMT–MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013)). The Court must then review the proposed settlement to ensure (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Lynn's Food Stores*, 679 F.2d at 1354.

### A. FINAL CERTIFICATION

As mentioned, there was no conditional certification or notice stage in this case. The Parties now request that this Court now certify two classes of employees under the FLSA for settlement purposes only: a Fluctuating Workweek (FWW) Class and a Caterina Class (Settlement Classes, collectively). Having thoroughly reviewed the

Parties' briefing and attached exhibits, the Court finds that final certification of these Settlement Classes for purposes of this Settlement only is warranted. The Court notes however that conditional certification is an important step in the FLSA collective action process that is meant to ensure all prospective class members have the opportunity to participate. Nonetheless, given the procedural protections discussed below and the limited scope of the Parties' proposed Settlement, the Court finds that final certification absent the typical conditional certification stage is warranted here.

Final certification for settlement purposes requires the Court to determine whether the settlement class members are similarly situated. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Doing so generally requires consideration of several factors, including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See id*.

The FWW Class consists of employees who were all paid under the same fluctuating workweek scheme that included overtime compensation. They allege that various prerequisites of the fluctuating workweek scheme were not satisfied, defendants made improper deductions, and plaintiffs received compensation that was inconsistent with the "fixed salary" component of this scheme. (Doc. # 128 at 9.) The Caterina Class consists of employees who were paid hourly with overtime but who allege that their regular rate of pay was improperly calculated and they were required to perform off-the-clock work. (*Id.*). The employees in both Settlement Classes were all manual laborers who worked at oil and gas wells across the United States. (*Id.* at 13–14.)

According to a financial consultant who analyzed the pay and time data in this case, the members of each Settlement Class were all subject to the same pay practices and their overtime was similarly miscalculated. (*Id.* at 15–16.) The Court finds that Plaintiffs' claims and pertinent employment duties were substantially similar.

Further, Defendants' defenses appear to apply equally. In short, they allege that neither pay policy—that applicable to the FWW Class and the Caterina Class—was illegal, that Plaintiffs consented to each payment scheme and the applicable deductions, and that the prerequisites for implementing such payment schemes were satisfied. (*Id.* at 8–9.) Defendants do not assert any individualized defenses with respect to any particular Plaintiff. (*Id.* at 19.)

Moreover, fairness and procedural considerations—such as allowing Plaintiffs to pool their resources for litigation—also favor collective treatment. Although there was no notice approved or circulated in this case, the Plaintiffs learned about this lawsuit by word of mouth and all Plaintiffs included in this Settlement signed opt-in consent forms—forms to which Defendants do not object. More importantly, only those Plaintiffs that have opted into one of the Settlement Classes will be affected by this Settlement. In other words, this Settlement does not affect the rights of any employees who have not already joined in this case; they may bring a separate action alleging the same claims against these Defendants, regardless of this Settlement and regardless of which Class they belong to, if either.

Finally, the Plaintiffs' Motion states that the Parties agree to the Settlement and jointly request approval. Although it is unclear to this Court whether each individual opt-

5

in Plaintiff was given the opportunity to review the final Settlement and object, the Parties represent that each of the opt-in Plaintiffs "signed consent forms that give the class representatives the right to make decisions about the litigation and settlement of their claims" (Doc. # 128 at 21). *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 230 (3d Cir. 2016) (declining to entertain opt-in plaintiffs' appeal from a district court order because they "ceded to [the named plaintiff] the ability to act on their behalf in all matters"). Even so, in the event that any Plaintiffs do not agree, the Settlement provides another layer of protection for them. Specifically, any Plaintiff that does not agree may elect not to deposit his settlement check; if he does so, he will retain all rights under the FLSA, as if he had never joined into this case, i.e. his claims will be dismissed without prejudice.

For all of these reasons, and in consideration of the factors set forth in *Thiessen*, 267 F.3d at 1105, the Court grants the Plaintiffs' request for final collective action certification. The Court now turns to review the Settlement.

### B. BONA FIDE DISPUTE

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1234 (M.D. Fla. 2010). To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the

6

computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 718 (E.D. La. 2008). The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id.* at 719–20.

In the proposed Settlement, Plaintiffs provide a thorough description of the nature of the dispute, Defendants' business, and the type of work performed by Plaintiffs. There is also a clear description of the Plaintiffs' justification for the disputed wages and Defendants' reasons for disputing the Plaintiffs' right to additional compensation. The Parties likewise disagree about the merits of Plaintiffs' claims and the validity of Defendants' defenses. Plaintiffs acknowledge that resolution of these issues would therefore require significant litigation, with the possibility of limited to no recovery on either side.

The Court finds that a bona fide dispute exists.

**C. FAIR AND REASONABLE**

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. *Baker v. Vail Resorts Mgmt. Co.*, Case No. 13-CV-01649-PAB-CBS, 2014 WL 700096, at *2 (D. Colo. Feb. 24, 2014). When determining whether a settlement is fair and reasonable, courts weigh a number of factors, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the

probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery. *Hargrove v. Ryla Teleservices, Inc.*, Case No. 2:11CV344, 2013 WL 1897027, at *2 (E.D. Va. Apr. 12, 2013) (citation omitted). There is a strong presumption in favor of finding a settlement fair. *Id.*

The Parties in this suit enjoy representation from experienced counsel who have been prosecuting and/or defending FLSA actions for many years, and this Court attributes significant weight to their professional judgment that this agreement represents a fair and reasonable settlement of this dispute. Further, the Court finds that this settlement is a product of arms-length negotiations that took place over the course of years with numerous offers being exchanged and an attempt at mediation at least once. The settlement also delivers fair value to Plaintiffs, who will receive compensation for lost wages without the risk, expense, and heartache that comes with protracted litigation and trial. The Settlement specifically obligates Defendants to pay a gross amount of $2,180,000, which will be proportionally distributed to each Plaintiff after deductions are made for attorney fees, enhanced payments to the named class representatives, and other administrative costs. Each Plaintiff's pro rata share was determined by a forensic analyst based on payroll data provided by Defendants.

Accordingly, the Court finds that the Settlement is fair and reasonable.

### D. ATTORNEYS' FEES

The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." 29 U.S .C. § 216(b); *see, e.g.*, *Gray v. Phillips Petrol. Co.*, 971 F.2d 591, 593 (10th Cir. 1992). Though the fee is mandatory, the Court has discretion

to determine the amount and reasonableness of the fee. *Wright v. U–Let–Us Skycap Serv., Inc.*, 648 F.Supp. 1216, 1218 (D. Colo. 1986). In common fund cases, it is standard to use a percentage method when calculating attorneys' fees. *See Gottlieb v. Barry*, 43 F.3d 474, 482–83 (10th Cir. 1994); *Barr v. Qwest Communications Co., LLC*, Case No. 01–cv–00748–WYD–KLM, 2013 WL 141565, *3–4 (D.Colo. Jan. 11, 2013). Foremost for this Court, regardless of the method used to calculate fees, is that the fees awarded must be reasonable. *Id.* at 482 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (implying a preference for the percentage of the fund method.)

Whichever method is used, the Court must consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) in determining the reasonableness of a fee award, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by a client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. "[R]arely are all of the Johnson factors applicable." *Uselton*, 9 F.3d at 854.

This Court adopts the percentage-of-the-fund approach, and finds that, taking into consideration the *Johnson* factors, the agreed upon fee and expense request is

reasonable as a matter of law. The Settlement provides an award for attorneys' fees and expenses that is 37% of the gross settlement amount, and Defendants do not oppose such an award. (Doc. # 128 at 29.) This is well within the normal range for a contingent fee award. *See Lucken Family Ltd. Partnership, LLLP v. Ultra Resources*, Inc., Case No. 09–cv–01543–REB–KMT, 2010 WL 5387559, at *5–6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.*, Case No. 95–B–2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable").); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D.Okla. June 8, 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

Moreover, Plaintiffs' counsel, working on a contingency fee basis, expended a reasonable amount of time and labor on the case and the ultimate fee award represents a lodestar multiplier of 1.77, which is consistent with lodestar multipliers approved by other courts in this District. *Mishkin v. Zynex, Inc.*, No. 09-CV-00780-REB-KLM, 2012

WL 4069295, at *2 (D. Colo. Sept. 14, 2012) (collecting cases in this District approving lodestar multipliers ranging between 2.5 and 4.2). More importantly, counsel achieved positive results for Plaintiffs, sparing them from lost energy and funds that often come with extended litigation and trial on the merits.

Accordingly, the award of attorneys' fees and expenses as set forth in the Settlement Agreement is approved.

### III.    CONCLUSION

In consideration of the foregoing, the Court ORDERS:

1. Plaintiffs' Second Unopposed Motion for Approval of Fair Labor Standards Action Settlement (Doc. # 128) is GRANTED.
2. The Settlement is APPROVED, including all terms set forth in the Settlement Agreement and the pro rata distribution of funds set forth in the attached exhibits. (Doc. ## 128-1, 128-2, 128-3, 128-4.)
3. The parties are directed to implement the administration of the settlement as set forth in the Settlement Agreement, including the use of the Qualified Settlement Fund account by the claims administrator in accordance with 26 C.F.R. § 1.468B-1.  (Doc. # 128.).
4. The lawsuit and all claims of all Settling Plaintiffs are DISMISSED WITH PREJUDICE.
5. The lawsuit and all claims of any Settling Plaintiffs who do not deposit their Settlement checks are DIMISSED WITHOUT PREJUDICE.

6. This Court retains jurisdiction for the limited purpose of enforcing the Settlement Agreement. Should an issue arise during the administration of the Settlement Agreement, including issues related to the completion of payments, the parties may move to reopen the case for resolution of such issues.

7. In light of this conclusion, Defendants' Motion for Extension of Time is DENIED AS MOOT (Doc. # 123), which also MOOTS the Recommendation of the United States Magistrate Judge. (Doc. # 125.)

DATED: February 22, 2018

BY THE COURT:

*Christine M. Arguello*

CHRISTINE M. ARGUELLO
United States District Judge